

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**KLLM TRANSPORT SERVICES, LLC and**
**KLLM 401(K) RETIREMENT PLAN**                                         **PLAINTIFFS**

V.                                                           CIVIL ACTION NO. 3:09cv609 TSL-JCS

**RANDY MOWDY, MOWDY FINANCIAL,**
**LLC, ALLIANCE PARTNERS, and ALLIANCE**
**TRUST COMPANY, LLC**                                                  **DEFENDANTS**

## COMPLAINT

KLLM Transport Services, LLC ("KLLM") and the KLLM 401(k) Retirment Plan file this Complaint against Randy Mowdy ("Mowdy"), Mowdy Financial, LLC ("Mowdy Financial"), Alliance Partners ("Alliance"), and Alliance Trust Company, LLC ("Alliance Trust") (collectively, the "Defendants"), and in support thereof state as follows:

### PARTIES

1. KLLM is a Texas limited liability company with its principal place of business in Rankin County, Mississippi.

2. KLLM 401(K) Retirement Plan is an employee retirement plan under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*

3. Defendant Mowdy is a Mississippi resident who resides in Ridgeland, Mississippi.

4. Defendant Mowdy Financial is a Mississippi Limited Liability Company with its principal place of business in Ridgeland, Mississippi.

5.   Defendant Alliance is a Mississippi partnership with its principal place of business in Ridgeland, Mississippi.

6.   Defendant Alliance Trust is a Nevada limited liability company with its principal place of business in Ridgeland, Mississippi.

## JURISDICTION

7.   This Court has independent federal question jurisdiction over this civil action pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331 because it relates to KLLM's 401(k) Retirement Plan (the "Plan"), an Employee Welfare Benefit Plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*

8.   KLLM has standing to bring this claim as a fiduciary of the Plan, pursuant to 29 U.S.C. § 1002.

9.   KLLM 401(k) Retirement Plan has standing to bring this claim under 29 U.S.C. § 1132(d)(1).

## VENUE

10.   Venue is proper in this Court pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 104, because the cause of action arose within the United States District Court for the Southern District of Mississippi, Jackson Division.

## FACTS

11.   Until approximately May 2007, Defendants served as fiduciaries for the KLLM 401(k) Retirement Plan. Defendants served as investment advisors and overall plan managers for the Plan.

12.   In 2005, Mowdy and/or Defendants recommended changing several service provider components of the Plan. Mowdy recommended changing the investment custodian from Charles

Schwab Trust Company to John Hancock USA and replacing Invesmart, Inc., the third-party administrator, with Burgess, Crechale, and Necaise.

13. Mowdy and/or Defendants represented that the recommended changes would result in Plan participants paying significantly lower fees for management of the Plan. Specifically, Mowdy and/or Defendants represented that the fees charged by John Hancock USA and Defendants collectively would be .60% of plan assets.

14. The KLLM 401(k) Advisory Committee approved Mowdy's recommendations for the Plan. The accepted proposal provided that Mowdy would be receive .55% of total plan assets in fees.

15. However, the proposed Plan terms and fees submitted by Defendants failed to disclose that Mowdy and/or Defendants would receive an additional commission for a one-time transfer of funds to the Plan. As a result, the fees and commissions charged by Defendants were much higher than those approved by the 401(k) Advisory Committee.

16. Mowdy and/or Defendants also failed to provide KLLM and the Plan with copies of documents that were signed outside of the Advisory Committee approval process.

17. In addition, Defendants failed to fully disclose a mandatory provision from John Hancock requiring Trustee approval for payments over $250,000 in a 12 month period.

18. According to Mowdy's own admission, in 2006 he and/or the Defendants received a front-end commission or fee above the amount disclosed to the Plan and its participants. *See* June 8, 2007 Letter, attached as Exhibit "A." This money came from Plan assets.

19. Finally, Defendants violated their duty of confidentiality by relating confidential information regarding KLLM and the Plan to other clients.

20. Mowdy and/or Defendants' actions resulted in the Plan and its participants being charged approximately $121,000 in excessive and undisclosed fees and commissions. Specifically, through June of 2007, Mowdy and/or Defendants received approximately $265,000 from John Hancock USA. This was above the amount disclosed to the Plan and its participants. Based on the percentage of fees approved by the KLLM 401(k) Advisory Committee, Defendants' compensation should have been approximately $144,000. *See* Exhibit "A."

21. Accordingly, Defendants owe the Plan and its participants approximately $121,000 plus attorneys fees and interest.

## COUNT I
## BREACH OF FIDUCIARY DUTY

22. Plaintiffs incorporate the allegations of Paragraphs 1-21 as fully set forth herein.

23. Mowdy and/or Defendants served as fiduciaries for the Plan and its participants.

24. Mowdy and/or Defendants breached their fiduciary duties to the Plan and its participants by failing to disclose all fees and commissions in its proposals to the KLLM 401(k) Advisory Committee.

25. Mowdy and/or Defendants breached their fiduciary duties to the Plan and its participants by accepting fees and commissions in excess of those fees disclosed to the Plan and approved by the Plan.

26. Mowdy and/or Defendants breached their fiduciary duties to the Plan and its participants by breaching the duty of confidentiality concerning the distribution of information relative to KLLM to other clients.

27. Accordingly, Defendants are in violation of 29 U.S.C. § 1109(a), and Plaintiffs are entitled to damages for Defendants' actions.

## COUNT II
## MISAPPROPRIATION OR CONVERSION

28. Plaintiffs incorporate the allegations of Paragraphs 1-27 as fully set forth herein.

29. Mowdy and/or Defendants knowingly accepted fees and commissions in excess of those fees disclosed to and approved by the Plan and its participants.

30. Therefore, Mowdy and/or Defendants misappropriated or converted Plan assets by accepting fees and commissions in excess of those fees disclosed to the Plan and its participants.

## COUNT III
## FRAUD

31. Plaintiffs incorporate the allegations of Paragraphs 1-30 as fully set forth herein.

32. Mowdy and/or Defendants represented in their proposals to the Plan and its participants that their fees for management of Plan assets would be .55% of total Plan assets.

33. The Plan and its participants justifiably relied on such representation in approving Defendants' recommendations.

34. Mowdy and/or Defendants' representations were materially misleading and false, because Defendants received fees in excess of those presented to and approved by the Plan and its participants.

35. As a result of Defendants fraudulent representations, KLLM and the Plan Participants incurred damages.

## COUNT IV
## BREACH OF CONTRACT

36. Plaintiffs incorporate the allegations of Paragraphs 1-35 as fully set forth herein.

37. By accepting fees in excess of those fees disclosed to the Plan and its participants, Defendants violated their contracts with the Plan and its participants.

38. Plaintiffs are entitled to damages for Defendants' breach of contract.

JM R-W 666328 v1
2912047-000015 10/14/2009

## COUNT V
## VIOLATIONS OF DUTY OF LOYALTY

39. Plaintiffs incorporate the allegations of Paragraphs 1-38 as fully set forth herein.

40. As fiduciaries of the Plan, Defendants owed a duty of loyalty to the Plan and its participants.

41. By accepting fees in excess of those fees disclosed to the Plan and its participants, Defendants dealt with the assets of the plan in their own interest or for their own account in violation of 29 U.S.C. § 1106(b)(1) and/or received consideration for their own account in violation of 29 U.S.C. § 1106(b)(3).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs KLLM and the KLLM 401(k) Retirement Plan request the following relief:

(1) $121,000 plus interest from the date of payment in Plan assets wrongfully accepted by Defendants in fees and commissions;

(2) Unspecified money damages for Defendants' fraudulent representations and omissions and breach of contract;

(3) Attorney's fees and costs incurred in bringing this action against Defendants; and

(4) Any and all other appropriate relief as the Court may deem appropriate.

THIS the 14th day of October, 2009.

Respectfully submitted,

KLLM TRANSPORT SERVICES, LLC

By Its Attorneys,
BAKER, DONELSON, BEARMAN, CALDWELL
& BERKOWITZ, PC

By: _____
CLAY GUNN

- 6 -

Richard F. Yarborough, Jr. (MSB No. 6628)
Robert F. Walker (MSB No. 100660)
Clay Gunn (MSB No. 102920)
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC
MAILING: Post Office Box 14167
Jackson, Mississippi  39236-4167
PHYSICAL: 4268 I-55 North, Meadowbrook Office Park
Jackson, Mississippi  39211-6391
*Telephone*:   (601) 351-2400
*Telecopier*:   (601) 351-2424

## ALLIANCE PARTNERS
P. O. Box 3340
Ridgeland, MS 39158-3340
601-957-9557 • 888-950-0049 • Fax 601-957-9669

June 8, 2007

Jack Liles
6243 Waterford Drive
Jackson, MS 39211

Jack;

I realize I have lost credibility at this point, but I would appreciate you taking a few minutes to read this letter. After I received your letter of May 29th, I delayed sending you this letter until after I had time to evaluate what has transpired at KLLM.

Your new HR Director at KLLM should be given a copy of this letter for full disclosure. I did not copy this letter to Jim Richards and will leave it to your discretion in providing him with a copy, but please do not allow Bill Grothe, Linda Kirk, Keith Davis or Pat Nance to view this letter.

My original letter to you of May 18th offered full disclosure of what compensation I had been paid, along with my offer to waive all of my fees through 2008 in a good faith effort to repay the KLLM participants, and resign if this was not acceptable to you. I owe a debt to the participants of the KLLM 401(k) plan and it was my hope to pay them back by continuing my services with no fees deducted from their accounts for this period of time.

Because of the front-end compensation built into the John Hancock contract, I was very wrong to have charged any additional fees to the participants for the first 2 years. As wrong as this was, I did disclose to Bill Grothe and Linda Kirk all of my compensation built into the John Hancock contract and this is confirmed by the documents signed for John Hancock. This past week, however, I was made aware of documents which had been changed from their original content indicating this did not occur and I'm certain Linda Kirk is behind this taking place. I didn't go along with what she asked me to do and if the new Agent of Record for John Hancock was a recommendation of Bill or Linda there are good reasons to be leery of that arrangement. Linda is much more than a person who is not to be believed – she will destroy anyone who gets in her way.

Please consider the following which I know to be accurate;

For whatever reasons, Linda and possibly Pat Nance are protecting the actions of Gloria Crechale. Gloria should also come clean, but at this point she does not feel that she needs to do this. Burgess, Crechale & Necaise also owe money to the KLLM participants and should at least waive their fees for a 12-month period. In addition, their annual fee from that point forward should be reduced to no more than $30.00 per participant.

**EXHIBIT "A"**

*Affiliated Companies,*
MOWDY FINANCIAL, LLC
THE PLANNING GROUP, LTD
ALLIANCE TRUST COMPANY, LLC OF RENO, NEVADA

If you have been led to believe that the $56,000 in revenue sharing fees received by Burgess, Crechale & Necaise was paid from the general account of John Hancock, this is totally false and any knowledgeable HR Director will see through this and understand why it is not true. No different than the compensation paid to me, this additional compensation to them was also a plan expense paid by the KLLM participants. If this were not true, it would not have been reported on Schedule A of the Form 5500 <u>because only compensation paid from plan assets is reported on this schedule</u>.

With regard to me coming clean;

- While it is true that John Hancock is a prudent choice to serve the KLLM participants, and that Mowdy Financial did objectively adhere to all five advisory criteria recognized as the compliance definition of no conflicts of interest and not adversely affecting participants, I allowed the bonus and soft dollar compensation built into this contract to wrongly affect my actions at a bad time in my life.

- In 2006 and prior to my resignation as a registered NASD representative on 4-1-06, I was personally paid part of the front-end bonus reported on Schedule A of Form 5500 paid to Security Services Network and Mowdy Financial also received the other compensation reported on this schedule.

  Through June of 2007, including my part of the front-end bonus compensation and the Mowdy Financial hard and soft dollar compensation received, my estimated compensation received from John Hancock will be around $265,000. With regard to the final proposal accepted, if Mowdy Financial had received only 55 basis points of total plan assets through June of 2007, my compensation would have been approximately $144,000. This means I owe the KLLM participants approximately $121,000 and by waiving my fees through 2008 this debt would be repaid.

- My hope for restitution is to pay back the additional money I was paid by offering my services with fees waived through 2008. In addition, even with Mowdy Financial waiving all hard dollar fees there is still an additional soft dollar fee of 25 basis points built into the John Hancock contract. And, Mowdy Financial could use this soft dollar compensation received during this period of time to pay TPA fees not waived by Burgess, Crechale & Neicase.

A lot of participants are calling me concerned about why I am no longer their advisor and I have assured them the KLLM plan is very safe and they have nothing to worry about. I would like to continue serving these participants and have the opportunity to pay them back.

Jack, I offer you my sincere apology.

Cordially,

*Randy*

J. Randy Mowdy

P. S.   The enclosure is pertinent to what has occurred with the KLLM 401(k) plan, and your new HR Director should appreciate and understand the timeliness of this information.

*Affiliated Companies;*
*MOWDY FINANCIAL, LLC*
*THE PLANNING GROUP, LTD*
*ALLIANCE TRUST COMPANY, LLC OF RENO, NEVADA*